IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCINE WILSON                  :     CIVIL ACTION
                                 :
          v.                     :
                                 :
THE PHILADELPHIA HOUSING         :
AUTHORITY, et al.                :     NO. 06-4932

MEMORANDUM AND ORDER

McLaughlin, J.                              March 12, 2008

          Plaintiff Francine Wilson is a female, African-American
cement mason.  In this suit, she brings claims of race and gender
discrimination against her former employer, the Philadelphia
Housing Authority ("PHA"); her union, Cement Masons-Plasterers
Local Union No. 592 ("Union"); and two union officials, Michael
Angellilli and Michael Fera.  Specifically, Ms. Wilson brings
claims for intentional discrimination and disparate impact
against the PHA and the Union under Title VII, 42 U.S.C. § 2000e,
et seq.,; claims for retaliation against the Union under Title
VII; and claims under the Pennsylvania Human Relations Act
("PHRA"), 43 Pa. C.S.A. § 950 et seq., and state law claims for
intentional infliction of emotional distress against all
defendants.

          All defendants have filed motions to dismiss.  The PHA
has filed a motion seeking to dismiss Ms. Wilson's claims of race
discrimination and disparate impact on the grounds that she has

failed to exhaust her administrative remedies as to those claims. The PHA does not challenge Ms. Wilson's claims of gender discrimination.  The PHA also seeks to dismiss the claims against it for intentional infliction of emotional distress and for punitive damages on grounds of immunity.

The Union, Mr. Angellilli and Mr. Fera (collectively "the Union defendants") have filed a joint motion to dismiss. Their motion seeks to dismiss Ms. Wilson's Title VII and PHRA claims on the ground that Ms. Wilson failed to exhaust her administrative remedies.  The motion also argues that Ms. Wilson has failed to adequately allege a causal nexus sufficient to support her Title VII and PHRA retaliation claims.  The Union defendants have not moved to dismiss Ms. Wilson's state law claims against them for intentional infliction of emotional distress.

For the reasons below, the Court will grant the PHA's motion and dismiss Ms. Wilson's claims against the PHA for race discrimination and disparate impact under Title VII and the PHRA and for intentional infliction of emotional distress and punitive damages under state law.  The Court will grant the Union defendants' motion, in part, and will dismiss Ms. Wilson's claims for discrimination and disparate impact under Title VII and the PHRA.  The Court will deny the Union defendants' motion as to Ms. Wilson's claims for retaliation, but this denial is without

prejudice.  The Union defendants may reassert their arguments as
to Ms. Wilson's failure to exhaust her administrative remedies as
to her retaliation claims and her failure to adequately allege
causation on a fuller record at summary judgment.


I.    Background

      A.   The Allegations of the Complaint

           Plaintiff Francine Wilson is a practical cement mason.
In May 1999, she paid an initiation fee for Membership in the
Cement Masons-Plasterers  Union, Local No. 592, and was accepted
for membership.  Compl. ¶¶ 12-14.  In May 2004, the Union placed
Ms. Wilson for employment with the PHA.  Ms. Wilson worked at the
PHA from May 2004 to September 2005.  Compl. ¶¶ 16, 18.

           While working at the PHA, Ms. Wilson was subject to PHA
rules and regulations that forbid PHA contractors from working
alone in the residence of a PHA client and forbid contractors
from using the facilities, including the restrooms, at the
residence of a PHA client.  Beginning in 2005, Ms. Wilson was
repeatedly directed to work by herself at the residences of PHA
clients.  She was also the only contractor at her PHA job site
who was required to seek permission from the Union foreman or PHA
superintendent to use the off-site restroom facilities, and that
many times this permission was denied.  The Union foreman
requested that the PHA permit Ms. Wilson to use the restrooms at

the client's facilities in violation of PHA regulations.  Compl. ¶¶ 17, 19-23.

Ms. Wilson's work at the PHA job site required the use of a respirator, but her Union foreman and the PHA superintendent provided her only with a dust mask.  Her foreman and the PHA superintendent told her that an appointment with a PHA medical officer was required before she could be given a respirator, but that they refused to schedule this appointment.  Compl. ¶¶ 25-28.

Ms. Wilson informed the Union that she was working under conditions that violated PHA rules and regulations, but the Union took no action.  Defendants Michael Fera, the Union's President and Business Manager, and Michael Angellilli, an organizer for the Union, told her that if she did not like her working conditions that she could quit or sue the Union.  Compl. ¶¶ 29-32.

In August 2005, the PHA superintendent complained to Ms. Wilson that insufficient progress was being made at her job site.  Ms. Wilson responded by telling the PHA superintendent that she was working by herself.  Ms. Wilson then contacted the Union foreman and requested that a co-worker be referred to her job site.  The foreman told her that a coworker was being referred, but no co-worker arrived.  The Union foreman then contacted the PHA superintendent and said that Ms. Wilson was refusing to work.  The PHA superintendent then told Ms. Wilson

that she was terminated.  Ms. Wilson wanted to file a complaint against the PHA and the Union foreman, but the Union would not allow her to file a complaint against the foreman.  Compl. ¶¶ 33-42.

B.   The Procedural History of Ms. Wilson's Claims

Four years before filing the lawsuit at issue here, Ms. Wilson filed an earlier discrimination suit involving the Union. This earlier suit, Wilson v. Cement Masons'-Plasterers' Local Union No. 592, No. 02-cv-1406, was filed in this Court March 20, 2002.  The suit alleged that the Union and Union President Michael Fera, along with several other parties who are not defendants here, had discriminated against Ms. Wilson because of her race, national origin, and gender in violation of Title VII and the PHRA.  Among other allegations, the suit alleged that the Union treated Ms. Wilson unequally with respect to job assignments and work loads and failed to give her work assignments that were instead given to similarly situated male, Caucasian employees.  Compl. in Case No. 02-civ-1406 ("2002 Complaint") at ¶¶ 23-34.  This earlier suit remains pending before this Court and has been consolidated with the suit at issue here for all purposes.

While litigating her earlier lawsuit, Ms. Wilson began the process of filing an administrative complaint regarding the

subsequent discrimination she alleges she suffered from the PHA
and the Union in 2004 and 2005.  On September 26, 2005, Ms.
Wilson filled out a "charge information questionnaire" from the
Philadelphia Commission on Human Relations ("PCHR").  The
questionnaire is attached as Ex. A of PHA's Brief in Support of
its Motion to Dismiss.  The questionnaire asked Ms. Wilson to
provide "Respondent Information" about the "Employer, union,
employment agency against whom the charge is being filed," and
Ms. Wilson identified the respondent as "PHA."  She identified
the type of harm she had suffered as "harassment and discharge,"
and in the section asking her to state the reason she believed
adverse actions were taken against her, Ms. Wilson checked boxes
for race, national origin, color, age, disability, sex, and
retaliation.

Also on September 26, 2005, Ms. Wilson had an intake
interview conducted by a PCHR staff member.  Ms. Wilson has
attached to her opposition to the PHA's motion to dismiss the
staff member's handwritten notes of the interview and her
subsequent typed report.  Although the notes and the report
differ in some details, both reflect that Ms. Wilson complained
about her termination, her not being provided a respirator, and
her being required to violate PHA rules and regulations.
Although the handwritten notes do not clearly identify the

respondent to Ms. Wilson's claims, the typed report refers only to the PHA, not the other defendants here, as the respondent.

Ms. Wilson signed a formal complaint with the Philadelphia Commission on Human Relations on September 29, 2005. The complaint names only the PHA as respondent and alleges that it discriminated against Ms. Wilson by

> requiring that she get permission to use the rest-room while not requiring her male counterparts to do the same; subsequently terminating her after she requested a special work mask due to her sinus problems and because she questioned why she was working alone; on the basis of sex (gender) and disability/perceived disability.

Although the complaint identifies PHA as having violated a particular section of Philadelphia's Code concerning unlawful employment practices, the section it cites does not apply to Ms. Wilson's claims and appears to be cited in error.[1]

The Philadelphia Human Rights Commission also prepared a Statement of Particulars for Ms. Wilson's case, which largely

---

[1]   The complaint cites Philadelphia Code § 9-1103(A)(3)(c), which makes it unlawful for

> any employer, employment agency or labor organization prior to employment or admission to membership to: . . . (c) cause to be printed, published, or circulated any notice or advertisement relating to employment or membership indicating any preference, limitation, specification or discrimination based upon race, color, sex, sexual orientation, gender identity, religion, national origin, ancestry, age, handicap or marital status.

tracks the allegations set out in the report of Ms. Wilson's intake interview.  The Statement says that Ms. Wilson believed that she had been discriminated against on the basis of gender and perceived disability and mentions her supervisor's failure to provide her a respirator mask, her supervisor's requiring her to get approval for restroom breaks, which male employees were not required to do, and her being assigned to jobs without a partner in violation of procedure.

There is no indication in the parties' submissions as to whether the EEOC or the PCHR did any further investigation of Ms. Wilson's claims.  Ms. Wilson received a right-to-sue letter from the EEOC on August 9, 2006.  She filed this suit on November 7, 2006.

II.  <u>Analysis</u>

In their motions to dismiss, the defendants argue that Ms. Wilson has failed adequately to plead certain of her claims and failed to exhaust her administrative remedies as to others. Both failure to state a claim and failure to exhaust are properly raised under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  <u>Anjelino v. New York Times Co.</u>, 200 F.3d 73, 87-88 (3d Cir. 1999).

In ruling on a 12(b)(6) motion, a court must accept as true all of the factual allegations of the plaintiff's complaint.

8

Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Ordinarily, a
court ruling on a 12(b)(6) motion may not look beyond the
allegations of the complaint. In evaluating whether a plaintiff
has exhausted her administrative remedies, however, courts
routinely consider the plaintiff's administrative filings as
public records. See, e.g, Patton v. S.E. Pa. Transp. Auth., 2007
WL 219938 (E.D. Pa. January 26, 2007); c.f. Lightcap-Steele v.
KidsPeace Hosp., Inc., 2006 WL 1147476 at *5 (E.D. Pa. April 27,
2006) (collecting cases). In addition to the administrative
record, the Court will also consider as public records the
docketed complaint in Ms. Wilson's prior law suit.


    A.   The Claims against the PHA

       Ms. Wilson has brought claims against the PHA for
intentional and disparate impact discrimination on the basis of
race and sex under Title VII and the PHRA and for intentional
infliction of emotional distress under state law. The PHA has
moved to dismiss all race-based and disparate impact claims for
failure to exhaust administrative remedies and to dismiss the
state law claim on immunity grounds.


    1.   The Title VII and PHRA Claims

       Before bringing a claim under Title VII or the PHRA, a
plaintiff must first exhaust his or her administrative remedies.

9

See Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000)
(holding that, under Title VII, plaintiffs must exhaust their
administrative remedies "before they will be allowed access to
federal judicial relief") (citing 42 U.S.C. § 2000e-5(c));
Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997)
(holding that a plaintiff must file a timely administrative
complaint or else "he or she is precluded from judicial remedies
under the PHRA") (citing 43 Pa. C.S.A. §§ 959(a), 962).  Only
claims that are "fairly within the scope of the prior
administrative complaint, or the investigation arising therefrom"
can be considered to have been exhausted.  See Antol v. Perry, 82
F.3d 1291, 1295 (3d Cir. 1996).

　　　　Ms. Wilson's claims of racial discrimination are not
"fairly within" the scope of her administrative complaint.
Neither Ms. Wilson's complaint, nor the notes and report of her
intake interview, contain any reference to her being
discriminated against because of her race.  The only reference to
race discrimination in the administrative record provided to the
Court are the checked boxes on her "charge information
questionnaire" for race, national origin, and color.  Courts in
this circuit have uniformly held that a claim checked off on an
intake form, but not included in the subsequent formal charge, is
not properly exhausted.  See, e.g., Rajoppe v. GMAC Corp. Holding
Corp., 2007 WL 846671 at *7 (E.D. Pa. March 10, 2007);  Johnson

10

v. Chase Home Fin., 309 F. Supp. 2d 667, 672 (E.D. Pa. 2004);
Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 786 (W.D. Pa.
2000).  Ms. Wilson's claims against the PHA for race
discrimination will therefore be dismissed for failure to
exhaust.

Ms. Wilson's disparate impact claims are also not
within the scope of her administrative complaint.  A disparate
impact claim challenges "employment practices that are facially
neutral in their treatment of different groups but that in fact
fall more harshly on one group than another and cannot be
justified by business necessity";  such claims are in contrast to
the usual discrimination claim in which "[t]he employer simply
treats some people less favorably than others because of their
race color religion sex or other protected characteristic."
Raytheon v. Hernandez, 540 U.S. 44, 52 (2003) (internal quotation
omitted).

Nothing in the administrative record provided to the
Court shows that Ms. Wilson complained about any facially neutral
employment practices.  Although the notes and reports of Ms.
Wilson's intake interview show that she complained about having
to work alone in violation of the PHA's procedures, Ms. Wilson's
complaint was not directed to the procedures, but to her
supervisor's directive to violate them.  This is, therefore, at

most, a complaint of discriminatory treatment, not a complaint of disparate impact.

In contending that she raised the issue of disparate impact in her administrative proceedings, Ms. Wilson points to the statement in her intake report that says she "alleges that the male workers are treated far better than the few female workers by [Foreman Gloria] Snipes and [Superintendent Butch] Howard."  This is not an allegation of disparate impact.  It is an almost paradigmatic example of an allegation of disparate treatment, that her employer "simply treats some people less favorably than others" because of their sex.  See Raytheon, 540 U.S. at 52.

Because Ms. Wilson's claims against PHA for disparate impact are not fairly within the scope of her administrative complaint, they have not been exhausted and will be dismissed.


2    Claims for Intentional Infliction of Emotional
     Distress and Punitive Damages

The PHA also moves for dismissal on sovereign immunity grounds of Ms. Wilson's state law claim of intentional infliction of emotional distress and her claim for punitive damages under Title VII and the PHRA.  Ms. Wilson concedes in her response to the PHA's motion that PHA's arguments are correct on both of these points.  Pl. Mem. of Law in Opp. to PHA's Mot. to Dismiss at 6-7.  These claims will also be dismissed.

A.   <u>The Claims against the Union</u>

Ms. Wilson's claims against the Union are Title VII and PHRA claims for intentional discrimination based on race or gender, Title VII and PHRA claims for disparate impact, Title VII and PHRA claims for retaliation and state law claims of intentional infliction of emotional distress.  Ms. Wilson's claims against Union officials Michael Fera and Michael Angellilli are for violation of the PHRA and for intentional infliction of emotional distress.

The Union defendants argue that Ms. Wilson has failed to exhaust her administrative remedies with respect to her Title VII and PHRA claims against the Union.  They also argue that Ms. Wilson has failed adequately to allege the necessary causal link between her protected activities and any adverse action by the Union required to state a retaliation claim.[2]

Ms. Wilson concedes that neither her September 29, 2005, administrative complaint or the August 9, 2006, right-to-sue letter she received from the EEOC name the Union as a respondent.  Ms. Wilson argues that she has nonetheless exhausted

---

[2]   Although Ms. Wilson has brought Title VII discrimination, retaliation, and disparate impact claims only against the Union and the PHA, she has brought the equivalent claims for violations of the PHRA against all defendants, including Mr. Fera and Mr. Angellilli.  The Union defendants have not made any separate arguments on behalf of Mr. Fera and Mr. Angellilli for dismissal of these claims, but instead make the same exhaustion argument for all three defendants.

her administrative remedies against the Union by filing her earlier 2002 suit, which alleged that the Union had discriminated against her because of her race, national origin and gender. That suit, which also contained claims of retaliation and disparate impact, concerned actions that occurred between 1999 and 2001.  Ms. Wilson argues that the issues in the present suit, which concern actions taken in 2004 and 2005, are "fairly within the scope" of the administrative complaint that led to her 2002 suit because both allege the Union engaged in unlawful and discriminatory practices on the basis of race and gender, even though she acknowledges that the "factual circumstances" of the alleged discrimination are different.

1    Exhaustion of Administrative Remedies for Acts
     <u>That Occur While a Prior Complaint is Pending</u>

The United States Court of Appeals for the Third Circuit has consistently held that a plaintiff need not file a separate administrative complaint for "new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint."  <u>Waiters v. Parsons</u>, 729 F.2d 233, 237 (3d Cir. 1984); <u>see also</u> <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1024 (3d Cir. 1997); <u>Antol</u>, 82 F.3d at 1291.  If the EEOC conducts only a limited investigation or no investigation at all, then the issue of exhaustion is evaluated against the scope of what a reasonable

14

investigation by the administrative agency would have been.
Hicks v. ABT Associates, Inc., 572 F.2d 960, 965 (3d Cir. 1978).
The determination of the scope of a prior complaint or
investigation is fact specific.  Robinson, 107 F.3d at 1024.

In Waiters, the plaintiff alleged that her employer had
retaliated against her for filing an EEOC complaint.  The
plaintiff had filed an informal EEOC charge in 1978 alleging her
employer had failed to promote her because of her sex.  In 1979,
the plaintiff filed a formal EEOC charge alleging that her
employer had retaliated against her for that earlier filing.  The
EEOC investigated and found there was support for the plaintiff's
allegations, but issued no final adjudication or right-to-sue
letter.  In 1981, the plaintiff was discharged.  She did not file
an administrative charge for her termination but instead filed
suit, alleging her termination was the result of retaliation for
her formal and informal EEOC charges.  The district court
dismissed her claim for failure to exhaust, but the appellate
court reversed.  Waiters, 729 F.2d at 235-36.

The appellate court found that the plaintiff's
termination and the other acts alleged in her district court
complaint were "fairly within the scope" of her prior EEOC
complaint and the subsequent EEOC investigation.  The court
recognized the differences between the claims in the plaintiff's
administrative complaint and the subsequent complaint filed in

15

district court, acknowledging that "different officials are alleged to be responsible for the allegedly discriminatory acts, more than thirty months passed between the formal complaint and the discharge, and the alleged retaliatory acts are of a different nature."  Id., 729 F.2d at 238.  Despite this, the court found that the "core grievance" of both the administrative and district court complaints was "retaliation" and that the termination challenged in the plaintiff's lawsuit was the product of the same retaliatory intent as the incidents investigated by the EEOC.  Id.

The United States Court of Appeals for the Third Circuit revisited the Waiters decision in Robinson v. Dalton, emphasizing that Waiters had rejected a per se rule that the exhaustion requirement is excused for any complaint of retaliation occurring during the pendency of an EEOC complaint. Instead, the Robinson court reaffirmed that the determination of exhaustion required a careful case-by-case examination of the prior pending EEOC complaint and investigation, if any, and the unexhausted claim.  Id., 107 F.3d at 1024.

Robinson considered a complaint alleging retaliatory discharge.  The plaintiff had filed three prior administrative complaints alleging his employer discriminated against him by disapproving his requests for sick leave and penalizing him for his absences.  In his third complaint, the plaintiff also

16

complained of retaliation.  The EEOC made a finding of no discrimination, but later vacated that decision and remanded for a supplemental investigation of the plaintiff's discrimination claims.  The EEOC refused to investigate the claim of retaliatory discharge because it was not timely filed.  The district court dismissed the complaint for failure to exhaust.  Id., 107 F.3d at 1024-25.

On appeal, the Robinson court found that the district court had failed to evaluate the reasonableness of the EEOC's decision not to investigate the plaintiff's retaliatory discharge claim and had failed to determine the scope of a reasonable investigation of that claim.  The Robinson court found that, because the plaintiff's administrative complaints were not included in the appellate record, it lacked sufficient information to decide the issue of reasonableness and remanded the case for further proceedings.  On remand, the Robinson court directed the district court to consider whether the plaintiff's previous administrative complaints alleged the same discriminatory animus as the district court complaint; whether those administrative complaints were used as a basis for the plaintiff's discharge; and whether the EEOC should have investigated the plaintiff's claim.  Id., 107 F.3d at 1025-26.

2.   Claims against the Union for Discrimination and
     Disparate Impact

In this case, the Court faces the same issue that
confronted the Court of Appeals in Robertson, the lack of an
administrative record.  Although the parties have provided the
Court with some of the administrative filings for Ms. Wilson's
2005 complaint, they have not provided any part of the
administrative record for her earlier 2002 complaint.  The only
portion of the administrative record that appears in the official
filings for the 2002 case are the right-to-sue letters issued by
the EEOC on January 22, 2002, which state that the EEOC was
terminating its investigation.  Significantly, Ms. Wilson does
not argue that either her earlier administrative complaint or any
subsequent EEOC investigation was broader than the allegations in
her 2002 complaint.

The absence of the record makes it difficult for the
Court to determine whether, as Ms. Wilson argues, the issues in
the present suit are "fairly within the scope" of her earlier
administrative complaint.  Despite this difficulty, the Court
believes it has sufficient information to decide the issue of
exhaustion with respect to Ms. Wilson's discrimination and
disparate impact claims.

In Ms. Wilson's 2002 suit, she alleged that the Union
denied her job assignments and treated her unequally in enforcing
its policies and procedures with respect to "discipline, wages,

18

work schedules, job assignments and/or work loads" on the basis
of her race, national origin, and gender.  The only specific
examples given in the complaint of Union discrimination concern
the number of hours she worked in the years 1999 through 2001 and
replacing her on unspecified job sites with male, Caucasian
employees.  The only allegation of disparate impact in the 2002
complaint is that the policies and practices of the Union
"regarding discipline, wages, work schedules, job assignments,
and/or work loads have a disparate impact upon females and
female, African-Americans" in unspecified ways. 2002 Complaint at
¶¶ 24-35, 52.

        In her 2005 complaint, Ms. Wilson alleges that the
Union subjected her to continuous and pervasive discrimination on
the basis of race and gender while she was employed with PHA from
May 2004 to September 2005.  Compl. ¶¶ 8, 42.  As in her 2002
complaint, Ms. Wilson alleges that the Union treated her
unequally in enforcing its policies and procedures with respect
to "discipline, wages, work schedules, job assignments and/or
work loads."  The 2005 complaint also contains the identical
general allegations of disparate impact as in the earlier
complaint.  Compl. ¶ 47, 66.

        The 2005 complaint also contains general allegations
that the Union failed to provide Ms. Wilson with fair
representation with respect to working conditions at PHA,

undermined her ability to perform her work assignments at PHA,
and ignored her complaints about work at PHA.  Compl. ¶¶  44-46.
The specific incidents pled concern the Union's refusal to
address her concerns about working alone in violation of PHA
regulations and Union representatives allegedly telling her that
if she did not like her job conditions she could quit.  The Union
also allegedly informed Ms. Wilson after her termination that she
could not file a complaint against her foreman.[3]  Compl. 30-32,
41-42.

     The allegations in Ms. Wilson's current complaint are
not "fairly within the scope" of the claims she made in 2002.
Following the analysis of Waiters, the "core grievance" of Ms.
Wilson's 2002 complaint against the Union was race and gender
discrimination reflected in the allegedly lower hours Ms. Wilson
worked from 1999 to 2001 and in unspecified instances in which
she was replaced on jobs by white male Union members.  These
allegations are distinct from the core grievance of the 2005
complaint, which alleges race and gender discrimination from the

---

[3]     The complaint lists several other discriminatory
actions allegedly taken by Ms. Wilson's foreman at PHA.  Although
the complaint refers to this person as the "Union foreman," it
does not specifically allege that the foreman was acting on
behalf of the Union when it committed the acts alleged.  The
notes and report of Ms. Wilson's intake interview describe the
foreman as an agent of PHA.  Even if Ms. Wilson's complaint were
read as alleging that the Union was responsible for the acts of
the "Union foreman," this reading would not alter the Court's
analysis.

Union's failing to support Ms. Wilson's complaints concerning job conditions at PHA.  There are no allegations in the 2002 complaint about a lack of Union support for any complaints by Ms. Wilson about job conditions.  Absent such allegations, the claims included in Ms. Wilson's 2002 complaint would not have put the EEOC on notice to investigate these claims, and Ms. Wilson has failed to exhaust those claims.

Similarly, to the extent that Ms. Wilson is relying on her 2002 complaint as evidence that she has exhausted her disparate impact claims, the vague allegations in that complaint of a disparate impact from unspecified Union procedures are insufficient to have put the EEOC on notice of those claims. Even if the Court were to find from her 2002 complaint that Ms. Wilson had put the EEOC on notice of a disparate impact claim, the only specific Union procedures alluded to in the 2002 complaint are those governing job assignments, work hours and lateness.  2002 Compl. at 16-21, 26-33.  The "core grievance" of Ms. Wilson's 2002 disparate impact claim therefore, at best, concerns those procedures.  In contrast, the only specific Union procedures mentioned in Ms. Wilson's 2005 complaint concern the Union's handling of Ms. Wilson's concerns about job conditions at PHA.  Compl. at ¶¶ 28-32, 35-42.  Because the "core grievances" of Ms. Wilson's 2002 and 2005 disparate impact claims are distinct, the 2005 claim is not "fairly within" the scope of the

earlier claim and Ms. Wilson not exhausted her administrative remedies with respect to that claim.

Having found that Ms. Wilson has failed to exhaust her administrative remedies with respect to her discrimination and disparate impact claims against the Union, the Court will dismiss both claims.

3.   Claims Against the Union for Retaliation

The Court does not have a sufficient record before it to determine whether Ms. Wilson has exhausted her administrative remedies with respect to her retaliation claim.  As found in Waiters, a plaintiff can be deemed to have exhausted her retaliation claims even if, as here, the allegedly discriminatory actions in her administrative complaint and her subsequent suit are factually distinct and occurred several years apart, as long as the motivating retaliatory intent behind the actions is the same.  Because the Court has not been provided with the administrative record for the 2002 complaint, and because both the 2002 and 2005 complaints contain only general allegations of retaliation, the Court cannot determine from the record before it whether the same retaliatory animus motivated the 2002 and 2005 claims.  The Court will therefore decline to address the exhaustion issue at this time with respect to Ms. Wilson's

retaliation claims against the Union.  The Union defendants may
raise this issue again on a fuller record at summary judgment.

  The Union defendants also argue that Ms. Wilson's
retaliation claims must be dismissed because she has failed to
adequately allege a causal connection between her complaints
about discrimination and the Union's alleged retaliatory acts.
Because almost three years passed between the filing of Ms.
Wilson's first lawsuit and the alleged retaliatory activity
alleged here and because Ms. Wilson has "failed to plead any
other evidence in support of her claim," the Union defendants
argue Ms. Wilson's retaliation claim against the Union fails for
want of causation.  Union Br. at 9.

  The Union defendants' argument is premature.  Absent
additional evidence of causation, the lengthy gap between Ms.
Wilson's 2002 and 2005 complaints would, standing alone, likely
defeat her claim.  See Krouse v. American Sterilizer Co., 126
F.3d 494, 503 (3d Cir. 1997) (holding that, "[a]bsent evidence of
intervening antagonism or retaliatory animus," the nineteen month
gap between the plaintiff's filing of his EEOC charge and the
defendant's subsequent retaliation was conclusive as to lack of
causation).  Ms. Wilson, however, is entitled to take discovery
to seek to develop that additional evidence.  The "mere passage
of time is not legally conclusive proof against retaliation."

Id, 126 F.3d at 503 (quoting Robinson v. S.E. Pa. Transp. Auth., 982 F.2d 892, 894 (3d Cir. 1993).

     The Court will therefore deny the Union defendants' motion to dismiss Ms. Wilson's retaliation claims.  This denial is without prejudice to the Union defendants' ability to raise the issue of exhaustion of remedies or lack of evidence of causation at summary judgment.

     An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCINE WILSON                  :    CIVIL ACTION
                                 :
        v.                       :
                                 :
THE PHILADELPHIA HOUSING         :
AUTHORITY, et al.                :    NO. 06-4932

ORDER

AND NOW, this 12th day of March, 2008, upon
consideration of the Motion of Defendant Philadelphia Housing
Authority to Dismiss Counts I, III, V, and VI of Plaintiff's
Complaint (Docket No. 12) and the Motion of Defendants, Cement
Masons and Plasterers Union Local 592, Michael Fera, and Michael
Angellilli to Dismiss the Plaintiff's Complaint (Docket No. 18),
and the responses thereto, IT IS HEREBY ORDERED, for the reasons
set out in the accompanying memorandum of law, that:

1)  The partial motion to dismiss (Docket No. 12) of
the Philadelphia Housing Authority (the "PHA") is GRANTED and the
following claims of the plaintiff's complaint are DISMISSED:

a)  The plaintiff's claims against the PHA for
race discrimination in violation of Title VII and the
Pennsylvania Human Relations Act;

b)  The plaintiff's claims against the PHA for
disparate impact discrimination under Title VII;

c)  The plaintiff's claims against the PHA for
intentional infliction of emotional distress under state law; and

d)    The plaintiff's claims against the PHA for punitive damages under the PHRA and state law.

2)    The partial motion to dismiss (Docket No. 18)[4] of defendants Cement Masons and Plasterers Union Local 592 ("the Union"), Michael Fera, and Michael Angellilli is GRANTED IN PART, and the following claims of the plaintiff's complaint are DISMISSED:

a)    The plaintiffs' claims of race and sex discrimination against the Union under Title VII and against the Union, Michael Fera, and Michael Angellilli under the Pennsylvania Human Relations Act; and

b)    The plaintiff's claims against the Union for disparate impact discrimination under Title VII;

3)    The motion to dismiss (Docket No. 18) of the Union, Michael Fera, and Michael Angellilli is DENIED as to the plaintiff's claims against the Union for retaliation under Title VII.


BY THE COURT:


/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.

---

[4]    Although this motion is titled as one to "Dismiss the Plaintiff's Complaint," the text of the motion and its proposed order seek to dismiss only Counts II, III, IV, and V of the complaint.